**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| CHARLES D. WALKER,<br>Plaintiff,<br>vs.<br>AMERIGAS PROPANE, L.P.,<br>Defendant. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, CHARLES D. WALKER ("Plaintiff"), by and through his attorneys, CONSUMER ATTORNEYS PLLC, hereby complains of the Defendant, AMERIGAS PROPANE, L.P. ("Defendant"), upon information and belief, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action alleging that Defendant has violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of his actual and/or perceived disability, interfered with the regarding the exercise of his rights under the ADA, retaliated against following his request for a reasonable accommodation.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the ADA (42 U.S.C. § 12188).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of the State of Louisiana.

4. Defendant's business activities affect interstate commerce, including but not limited to the distribution and sale of propane and related services across state lines.

**PROCEDURAL REQUIREMENTS**

5. Plaintiff filed a charge of discrimination upon which this Complaint is based with the United States Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC on January 7, 2026, with respect to the herein charges of discrimination and retaliation.

7. A copy of the Notice of Right to Sue is annexed hereto as Exhibit "A."

8. This Action is being commenced within ninety (90) days of receipt of said Right to Sue.

9. Plaintiff therefore exhausted his administrative remedies as is required by ADA.

**PARTIES**

10. At all relevant times, Plaintiff was and is a resident of Darlene Court, New Orleans, Louisiana.

11. Upon Information and belief, Defendant is a limited partnership duly existing pursuant to, and by virtue of, laws of the State of Delaware that is authorized to do business in the State of Louisiana, including in this district.

12. Upon information and belief, Defendant employs more than eight thousand (8,000) employees and is thus subject to all statutes upon which Plaintiff is proceeding herein.

13. At all relevant times, Plaintiff was an employee of Defendant, at their location at 107 Iris Avenue, Jefferson, Louisiana.

**STATEMENT OF FACTS**

14. Plaintiff commenced employment with Defendant in or around December 2008, wherein he served as a driver and service technician.

15. Plaintiff steadfastly performed his job duties in a loyal, efficient, and reliable manner for more than a decade.

16. Between the end of 2022 and beginning of 2023, Plaintiff developed anxiety and noticed changes in himself, compelling him to communicate with Defendant's managers, Horace Fontenot and James Richardson ("Richardson"), of his need for medical attention.

17. In March 2023, Plaintiff was diagnosed by his physician who found him suffering from acrophobia (fear of heights) and instructed him not to drive over high bridges until the condition is resolved, or at least, managed.

18. Plaintiff relayed to Defendant the findings of his physician and made a request to be accommodated by not being given routes with high bridges.

19. In response, the Defendant's managers approved Plaintiff's request.

20. In April 2023, Plaintiff followed up with his physician, who found no improvement in Plaintiff's condition and referred him to counseling to resolve his anxiety disorder.

21. After being seen by another doctor, this time a psychiatrist, Plaintiff was prescribed anxiety medication, instructed to continue with therapy, and received extended orders to avoid driving on high bridges due to his condition.

22. Moreover, Plaintiff's doctor specifically requested that Defendant continue with Plaintiff's accommodations.

23. Plaintiff provided these medical instructions to Defendant and requested a continuation or extension of his accommodation, which was also approved.

24. Sometime in May 2023, one of Defendant's managers, Richardson, began harassing Plaintiff every time he would come to the district in New Orleans.

25. For example, Richardson would incessantly ask Plaintiff for updates on his condition, thereby exacerbating Plaintiff's anxiety and inducing depression.

26. The constant harassment pressured Plaintiff to pursue additional visits to the doctor, which were not previously necessary, which required a $40.00 copayment for each visit.

27. To make matters worse, Defendant directed Plaintiff to make deliveries across the Mississippi River bridge, in direct contravention of the accommodation he previously sought and was approved for, notwithstanding its knowledge of Plaintiff's diagnosis and restrictions.

28. Plaintiff, due to fear of retaliation and lack of job security, was forced against his will to comply with Defendant's orders and directives, in violation of his doctors' advice, resulting in extreme anxiety, paranoia, and emotional distress.

29. Between June 2023 and September 2023, Plaintiff often reached out to Defendant regarding the stops on his schedule that required driving across the Mississippi River bridge to request reconsideration of the sudden denial of his requests for an accommodation (which were previously approved).

30. Rather than accommodate Plaintiff's disability by allowing him to pursue routes not requiring driving over high bridges, Defendant instructed Plaintiff to leave the stops on his schedule without actually completing them, stating words to the effect of the Defendant "could not do anything about it."

31. As a consequence, Plaintiff received negative performance reports due to incomplete deliveries regarding those stops involving high bridges which were left on his schedule.

32. In October 2023, Defendant contacted Plaintiff and instructed him to bring his assigned truck to Thibodaux, Louisiana, which would require Plaintiff to drive over a high bridge.

33. Plaintiff, in response, reminded Defendant of his medical condition and restrictions; in spite of same, Defendant demanded Plaintiff go back to his doctor for an update.

34. Despite Plaintiff providing Defendant with updated medical information from his physician as requested – verifying his current restrictions – Plaintiff was asked to go through a third party provider to submit another accommodation request.

35. In November 2023, Plaintiff received a call from the third party provider informing him that Defendant refused to approve his accommodation request, despite receiving a formal medical order from his physician as requested, and notwithstanding the prior approval of such requests for accommodations.

36. Defendant's decision was made despite actual notice that the restriction was intended to remain in place until Plaintiff's medical condition could be resolved or managed.

37. Defendant's decision was made without engaging in any interactive dialogue with Plaintiff concerning the nature and extent of his physical and/or mental limitations to determine whether he could be afforded a reasonable accommodation as required under the ADA and any applicable state and/or local law.

38. In December 2023, Plaintiff, while refilling the delivery truck assigned to him, witnessed Richardson disrespectfully speaking to Plaintiff's co-worker, including using vulgar language and threatening his job.

39. Plaintiff waited Richardson to calm down and then expressed to him how unprofessional the interaction was between him and Plaintiff's co-worker.

40. Despite Plaintiff expressing his concerns, Richardson dismissed them and proceeded to argue with the Plaintiff, rather than engaging in a respectful and constructive conversation.

41. The incident made it even more difficult for Plaintiff to address the issue regarding his anxiety and acrophobia, as it heightened his fear of retaliation and job insecurity.

42. Also in December 2023, Plaintiff received a call from Defendant's Human Resources representative, Darlene Tyson ("Tyson").

43. In this call, Tyson gave Plaintiff an ultimatum: he was to immediately return to full duties or resign.

44. This was, again, in spite of the fact that Defendant had on file Plaintiff's medical orders issued by his physician and repeated requests for an accommodation of his mental disability.

45. Due to fear of losing his job – which was the only source of his income – Plaintiff contemporaneously responded that he would comply and return to full duties.

46. After the call and upon further reflection, Plaintiff realized that he truly could not return to full duties, as this would have been in utter disregard of his doctor's medical orders and performing the work demanded of him caused him extreme anxiety, paranoia, and emotional distress.

47. Accordingly, Plaintiff called Tyson back to inform her that his condition was still in existence, and had actually worsened as a result of the recent harassment from Defendant.

48. Tyson then informed Plaintiff that he was considered resigned.

49. Plaintiff told Tyson that he had no intention of resigning, but Tyson proceeded to emotionally manipulate him by praising Plaintiff as a good worker and suggesting that he continue seeking help for the improvement of his condition.

50. Effectively, Defendant constructively terminated Plaintiff despite the fact that he could perform job duties with a reasonable accommodation.

51. As a result of Defendant's blatant and willful violation of his protected rights under the ADA against interference and retaliation, Defendant's actions have detrimentally affected Plaintiff's emotional state of mind and caused him financial harm.

52. It is clear from the extremely short temporal proximity of Plaintiff's continuing requests for accommodations and Defendant's decision to terminate him that the reason to terminate Plaintiff was discriminatory and retaliatory in nature.

53. Indeed, it is obvious that the only reason Plaintiff was terminated was due to his mental disability.

54. Rather than engaging in a meaningful interactive dialogue, Defendant terminated Plaintiff in order to avoid providing a reasonable accommodation as is required by law.

55. Therefore, Plaintiff has been unlawfully discriminated against on the basis of his actual and/or perceived disabilities and for requesting an accommodation.

56. Defendant acted intentionally and intended to harm Plaintiff.

57. Defendant treated Plaintiff this way solely due to his disability, and for requesting an accommodation.

58. Alternatively, Defendant's decision to terminate Plaintiff was at least in part substantially motivated by the advent of his disability and need for continuous accommodation.

59. Defendant retaliated against Plaintiff solely because he continually requested reasonable accommodation(s) pursuant to his physician's medical orders.

60. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of employment, income, other compensation which such employment entails, and emotional distress damages.

61. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

62. Plaintiff was and is disabled and has a serious health condition within the meaning of the ADA, and Defendant perceived Plaintiff to be disabled (as evidenced by Plaintiff's informing them and providing evidence of same).

63. Plaintiff is a qualified individual by virtue of his prior experience acting as a driver and service technician who can perform the essential functions of her employment with or without a reasonable accommodation as defined by §12111(8) of the ADA.

64. At all times relevant, Plaintiff's disability was a physical impairment which substantially limits one or more major life activities within the meaning of § 12102(1)(A) of the ADA, including, but not limited to: driving, traveling, performing manual tasks, working, concentrating, and thinking, particularly in situations involving heights or elevated roadways such as bridges.

65. Defendant unlawfully discriminated against, humiliated, degraded, and belittled Plaintiff and retaliated against him for seeking to permit him to seek leave as is his right under the law.

66. The above are just some of the ways the Defendant discriminated and retaliated against the Plaintiff while employing him.

67. Plaintiff was offended, disturbed, and humiliated, by the blatantly unlawful, discriminatory, and retaliatory termination.

68. Defendant's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law given the size of the Defendant as an employer.

69. As such, Plaintiff demands punitive damages as against Defendant.

**AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION**
**UNDER THE AMERICANS WITH DISABILITIES ACT**

70. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set herein at length.

71. Section 12112 of the ADA, titled "Discrimination," provides:

a. General rule. - No covered entity shall discriminate against a qualified individual on the basis of **disability** in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

72. Defendant violated this section as set herein

**AS A SECOND CAUSE OF ACTION FOR RETALIATION**
**UNDER THE AMERICANS WITH DISABILITIES ACT**

73. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

74. The ADA prohibits retaliation, interference, coercion, or intimidation.

75. Section 12203 of the ADA provides, in part:

a. Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

76. Defendant violated this section as set forth herein.

**AS A THIRD CAUSE OF ACTION FOR INTERFERENCE**
**UNDER THE AMERICANS WITH DISABILITIES ACT**

77. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

78. The ADA prohibits retaliation, interference, coercion, or intimidation.

79. Section 12203 of the ADA provides, in part:

b. Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of her or her having exercised or enjoyed, or on account of her or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

80. Defendant violated this section as set forth herein.

**JURY DEMAND AND PRAYER FOR RELIEF**

81. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

WHEREFORE, Plaintiff respectfully requests a judgment against the Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by the ADA in that Defendant discriminated and retaliated against Plaintiff on the basis of his actual and/or perceived disability and requesting an accommodation.

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination and retaliation and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant' unlawful employment practices.

Dated: Flushing, New York
April 7, 2026

Respectfully submitted,

**LAW OFFICES OF DAVID S. MOYER**

*/s/ David S. Moyer*
David S. Moyer
13551 River Road
Luling, LA 70070
T: (985) 308-1509
E: davidmoyerlaw@gmail.com

**SAGE LEGAL LLC**

By: */s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff*
*Charles D. Walker*