**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CHARLES D. WALKER** **Plaintiff** | **CIVIL ACTION NO.: 2:26-cv-00726-EEF-DPC** |
| **VERSUS** | **JUDGE ELDON E. FALLON** |
| **AMERIGAS PROPANE, L.P.** **Defendant** | **MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT** |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS AND/OR RULE 12(E) MOTION FOR MORE DEFINITE STATEMENT**

Defendant, AmeriGas Propane, Inc. ("AmeriGas" or "Defendant"), submits this Memorandum in Support of its Rule 12(b)(6) Motion to Dismiss and/or Rule 12(e) Motion for More Definite Statement. For the reasons set forth below, the Court should dismiss the claims alleged in the Complaint ("Complaint") filed by Plaintiff, Charles D. Walker ("Plaintiff") because Plaintiff has failed to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Alternatively, this Court should order Plaintiff to amend his Complaint to more definitely state his claims.

## Summary of Argument

Plaintiff worked as a driver for AmeriGas for 15 years when he suddenly developed a fear of heights. Plaintiff requested AmeriGas accommodate his alleged disability by altering his assigned driving routes to avoid high bridges until his condition resolved or was managed, which Plaintiff concedes AmeriGas initially provided. According to Plaintiff, AmeriGas continued to engage in the interactive process, which involved a third-party provider, and ultimately denied Plaintiff's accommodation request. Following denial, Plaintiff refused to return to full duties and contends AmeriGas constructively terminated his employment on December 12, 2023.

Plaintiff subsequently filed this lawsuit after his employment with AmeriGas ended. The Complaint purports to allege three separate causes of action under the Americans with Disabilities Act ("ADA"): (1) discrimination; (2) retaliation; and (3) interference. Each cause of action follows an identical, conclusory formula: it incorporates every preceding paragraph by reference, recites the relevant statutory provision, and states "Defendant violated this section as set forth herein."

As a threshold matter, Plaintiff's claims are facially implausible, as he failed to administratively exhaust his claims. Plaintiff filed a Charge with the Equal Employment Opportunity Commission ("EEOC") but failed to allege he was disabled within the meaning of the ADA. The Court can dismiss Plaintiff's lawsuit in its entirety here, at the outset, given this threshold deficiency. Yet, even if the EEOC Charge sufficiently alleged a disability, the Charge does not allege any facts regarding retaliation or interference, and those claims are now time-barred. Likewise, because the facts alleged in the Charge are limited to discrete events that occurred in December 2023, Plaintiff's instant discrimination claim, based on prior events that exceed the scope of the Charge, must also be dismissed as time barred.

Even if Plaintiff administratively exhausted his claims, which Defendant disputes, Plaintiff's claims substantively fail because the Complaint is devoid of sufficient factual detail supporting those claims. Instead, the Complaint, which asserts three distinct causes of action, incorporates every paragraph into each count without identifying which paragraphs support which claim. As written, Plaintiff's Complaint offers nothing more than broad statements and legal conclusions that fail to put Defendant on notice of the claims alleged against it. Further, to the extent Plaintiff's interference claim is based on Defendant's participation in the interactive process under the ADA, Plaintiff's claim necessarily fails.

Alternatively, if Plaintiff's claims survive dismissal, the Court should order Plaintiff to amend and re-plead his claims. Plaintiff's imprecise pleading technique renders each cause of action so vague and ambiguous that Defendant cannot ascertain what legal theories Plaintiff purports to assert, which factual allegations support which of his claims, what discrete acts constitute the claimed violations, or what adverse actions form the basis of each claim. A more definite statement is necessary so that Defendant can prepare a meaningful response and assert appropriate defenses.

## Relevant Allegations in Complaint[1]

The following are allegations quoted or excerpted from Plaintiff's Complaint:

### I. Allegations Regarding Plaintiff's Employment.

a. Plaintiff began employment with AmeriGas in December 2008.[2]

b. Plaintiff worked for AmeriGas as a driver and service technician based out of AmeriGas' Jefferson, Louisiana location.[3]

c. For nearly 15 years, Plaintiff drove routes across south Louisiana that included elevated roadways and bridges.[4]

d. Notably, based on the allegations in the Complaint regarding Plaintiff's residence and work location, Plaintiff's only possible route to Defendant's office required him to cross a bridge there-and-back in his personal vehicle.[5]

---

[1] For purposes of this motion, Defendant is merely reciting Plaintiff's allegations. Defendant has not answered this lawsuit yet, and may only be required to do so after this Court rules on this motion. Defendant reserves its right to respond to each and every allegation made by Plaintiff at the appropriate time. In the meantime, Defendant states it did not violate any applicable law and does not owe Plaintiff any damages or recovery whatsoever.

[2] R. Doc. 1, ¶ 14.

[3] *Id*.

[4] *Id*. at ¶¶, 13-18, 27, 29-30, 32, 64

[5] *Id*. at ¶¶ 10, 13. Attached as Exhibit A is a screenshot of a Google map route from Plaintiff's residence, as alleged in the Complaint, to Defendant's office, as alleged in the Complaint. Attached as Exhibit B is a screenshot of a Google Street View photograph of the I-10 Highrise Bridge which Plaintiff would have had to cross on his route to and from

## II. Plaintiff's Alleged Disability.

a. In late 2022 and early 2023, Plaintiff alleges he developed anxiety, which "compell[ed] him to communicate with Defendant's managers, Horace Fontenot and James Richardson, [] his need for medical attention."[6]

b. In March 2023, Plaintiff alleges a physician diagnosed him with acrophobia (fear of heights) and instructed him "not to drive over high bridges until the condition is resolved, or at least, managed."[7]

c. Plaintiff alleges his disability substantially limits major life activities, including driving, traveling, performing manual tasks, working, concentrating, thinking, particularly in situations involving heights or elevated roadways such as bridges.[8]

## III. AmeriGas Initially Accommodated Plaintiff's Disability.

a. On an unknown date, Plaintiff informed AmeriGas of his diagnosis and requested AmeriGas accommodate his diagnosis by not assigning him driving routes with high bridges.[9]

b. Plaintiff concedes his managers accommodated his request.[10]

---

Defendant's office. The Court may take judicial notice of the Google map route, available at https://www.google.com/maps/dir/Darlene+Ct,+New+Orleans,+LA+70128/107+Iris+Ave,+Jefferson,+LA+70121/@30.0006756,90.0322103,13.46z/data=!4m14!4m13!1m5!1m1!1s0x889e03d7da5402c9:0x4dfdd3a10bb83500!2m2!1d89.9555239!2d30.0665679!1m5!1m1!1s0x8620a54589a6f0ed:0x83a58047c5dc60e4!2m2!1d90.1400076!2d29.9585703!3e0?entry=ttu&g_ep=EgoyMDI2MDYyMy4wIKXMDSoASAFQAw%3D%3D (last visited June 25, 2026), and of the Google view I-10 Highrise Bridge available at https://www.google.com/maps/@30.0067517,-90.028718,3a,61.9y,149h,89.98t/data=!3m7!1e1!3m5!1s_vy88EIq6QrEb7m2VhXGYg!2e0!6shttps:%2F%2Fstreetviewpixelspa.googleapis.com%2Fv1%2Fthumbnail%3Fcb_client%3Dmaps_sv.tactile%26w%3D900%26h%3D600%26pitch%3D0.015192598584647499%26panoid%3D_vy88EIq6QrEb7m2VhXGYg%26yaw%3D149.00012926554868!7i16384!8i8192?entry=ttu&g_ep=EgoyMDI2MDYyMy4wIKXMDSoASAFQAw%3D%3D (last visited June 25, 2026). *See Magee v. Winn-Dixie Stores, Inc.*, No. 16-4364, 2017 U.S. Dist. LEXIS 13192, n. 9 (E.D. La. Jan. 30, 2017) (taking judicial notice of a Google street view) (citation omitted).

[6] *Id*. at ¶ 16.

[7] *Id*. at ¶ 17.

[8] *Id*. at ¶ 64.

[9] *Id*. at ¶ 18.

[10] *Id*. at ¶ 19.

c. In April 2023, Plaintiff's medical providers prescribed medication and treatment and gave Plaintiff "extended orders to avoid driving on high bridges due to his condition."[11] Plaintiff's doctor requested Defendant continue with Plaintiff's accommodations.[12]

d. Plaintiff requested a continuation or extension of his accommodation and concedes AmeriGas approved this request.[13]

e. Plaintiff alleges his manager, Richardson, "incessantly" asked Plaintiff for updates on his condition, which he claims exacerbated his anxiety and induced depression.[14]

f. Plaintiff alleges Richardson's questions "pressured [him] to pursue additional visits to the doctor," requiring copayments.[15]

g. On an unidentified date, Plaintiff alleges AmeriGas directed him to make deliveries across the Mississippi River bridge.[16] Plaintiff does not allege who provided these directions and if such individual had knowledge of Plaintiff's condition.

h. Plaintiff complied with Defendant's directions "due to fear of retaliation and lack of job security[.]"[17] Plaintiff alleges this resulted in anxiety, paranoia, and emotional distress.[18]

i. Between June 2023 and September 2023, Plaintiff alleges he "often reached out to

---

[11] *Id*. at ¶¶ 20-22.
[12] *Id*. at ¶ 22.
[13] *Id*. at ¶ 23.
[14] *Id*. at ¶ 25.
[15] *Id*. at ¶ 26.
[16] *Id*. at ¶ 27.
[17] *Id*. at ¶ 28.
[18] *Id*. at ¶ 28.

Defendant regarding the stops on his schedule that required driving across the Mississippi River bridge to request reconsideration of the sudden denial of his requests for accommodation (which were previously approved)."[19] Plaintiff does not identify whom he reached out to or when.

j. Plaintiff alleges Defendant instructed him to "leave the stops on his schedule without actually completing them" because Defendant "could not do anything about it."[20] Plaintiff does not identify who provided these instructions.

k. Plaintiff alleges he received negative performance reports due to incomplete deliveries regarding those stops involving high bridges which were left on his schedule.[21] Plaintiff does not identify who gave him negative performance reports or when he received such reports.

## IV. Defendant Requested an Update on Plaintiff's Condition.

a. In October 2023, Plaintiff alleges Defendant instructed him to bring his assigned truck to Thibodaux, Louisiana, requiring Plaintiff to drive over a high bridge.[22] Plaintiff does not allege who gave this instruction.

b. In response to Defendant's instructions, Plaintiff "reminded Defendant of his medical condition and restrictions[.]"[23]

c. In response, Defendant "demanded Plaintiff go back to his doctor for an update."[24]

d. Plaintiff provided updated medical information and Defendant subsequently asked

---

[19] *Id*. at ¶ 29.
[20] *Id*. at ¶ 30.
[21] *Id*. at ¶ 31.
[22] *Id*. at ¶ 32.
[23] *Id*. at ¶ 33.
[24] *Id*.

Plaintiff to submit an accommodation request through a third party.[25]

e. In November 2023, the third-party provider advised Plaintiff that Defendant refused his accommodation request, despite prior accommodations.[26]

**V. Plaintiff's December 2023 Termination.**

a. In December 2023, Plaintiff alleges he witnessed Richardson acting unprofessionally toward another coworker.[27] Plaintiff does not allege what Richardson said or to whom Richardson was speaking.

b. Plaintiff alleges that when he confronted Richardson about this behavior, Richardson dismissed him, making it "even more difficult for Plaintiff to address the issue regarding his anxiety and acrophobia, as it heightened his fear of retaliation and job insecurity."[28]

c. In December 2023, Plaintiff alleges Human Resources representative, Darlene Tyson, gave him an ultimatum: return to full duties or resign.[29]

d. Plaintiff alleges he agreed to return to full duties.[30]

e. However, Plaintiff claims he realized he could not return to full duties, as this caused him anxiety, paranoia, and emotional distress.[31]

f. Plaintiff informed Tyson he could not return to full duties, as his "condition was still in existence, and had actually worsened as a result of the recent harassment

---

[25] *Id*. at ¶ 34.
[26] *Id*. at ¶ 35.
[27] *Id*. at ¶ 38.
[28] *Id*. at ¶¶ 39-41.
[29] *Id*. at ¶¶ 42-43.
[30] *Id*. at ¶ 45.
[31] *Id*. at ¶ 46.

from Defendant."[32] Plaintiff does not allege who harassed him, how he was harassed, or when.

g. Tyson informed Plaintiff he "was considered resigned."[33]

## VI. Plaintiff's EEOC Charge.

a. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[34] Plaintiff does not attach his EEOC Charge to the lawsuit or describe the allegations asserted in the Charge.

b. On January 7, 2026, Plaintiff received a Notice of Right to Sue letter from the EEOC.[35]

c. Plaintiff's EEOC Charge alleges he provided "doctor's notes" and requested an accommodation to "not drive over high bridges because it exacerbated [his] condition."[36] The EEOC Charge does not describe Plaintiff's alleged condition or disability. Nor does the Charge allege Defendant had knowledge of Plaintiff's disability or regarded him as disabled.

d. The EEOC Charge alleges Richardson "constantly asked [Plaintiff] for an update on [his] condition" and ordered Plaintiff to go back to his doctor.[37]

e. The EEOC Charge contends Defendant denied his accommodation request and required Plaintiff to return to work full duty or resign.[38]

---

[32] *Id*. at ¶ 47.
[33] *Id*. at ¶ 48.
[34] *Id*. at ¶ 5.
[35] *Id*. at 6.
[36] Plaintiff's EEOC Charge is attached hereto as Exhibit C.
[37] See Exhibit C.
[38] See Exhibit C.

f. Plaintiff alleges in the EEOC Charge that he told Tyson he could not do his job.[39]

g. The EEOC Charge alleges Defendant violated the Americans with Disabilities Act ("ADA") by denying a reasonable accommodation.[40]

h. The EEOC Charge does not allege Defendant retaliated against Plaintiff or interfered with Plaintiff's exercise of rights under the ADA.

**VII. Plaintiff's Lawsuit.**

a. On April 7, 2026, 90 days after Plaintiff received the Notice of Right to Sue letter, Plaintiff filed this lawsuit, alleging three causes of action against Defendant: (1) ADA discrimination; (2) ADA retaliation; and ADA interference.[41]

b. Plaintiff structures each cause of action identically by incorporating all prior paragraphs by reference, reciting the applicable statutory provision, and making the conclusory statement that "Defendant violated this section as set forth herein."[42]

## Legal Standard

### I. Standard of Review for Motions Under Rule 12(b)(6).

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court has held that to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 570). Under Rule 8 of the Federal Rules of Civil Procedure, the notice pleading standard

[39] See Exhibit C.
[40] See Exhibit C.
[41] Rec. Doc. 1, ¶¶ 70-80.
[42] *Id*. at ¶¶ 70-80.

demands "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Papason v. Allain*, 478 U.S. 265, 286 (1986)). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 545).

Citing *Twombly*, the Supreme Court in *Iqbal* set forth two working principles that underlie the standard for analyzing a motion to dismiss under Rule 12. *See Iqbal*, 556 U.S. at 678-679 (citing *Twombly*, 550 U.S. at 555-556). "First, the tenet that a court must accept as true all of the allegations contained in a complaint" does not require a court to accept the plaintiff's alleged "legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). The Supreme Court has held that a court considering a motion to dismiss filed under Rule 12(b)(6) must determine if the factual allegations in a plaintiff's complaint raise a right to relief above the speculative level. *Rhodes v. Prince*, 360 F. App'x. 555, 557 (5th Cir. 2010) (citing *Twombly*, 550 U.S. at 555).

In deciding a motion to dismiss under Rule 12(b)(6), the court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claims, and matters of public record. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *see also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (in resolving a Rule 12(b)(6) motion, "the court may consider . . . matters of which judicial notice may be taken."). Apart from these categories of documents, if the court considers matters outside the pleadings, it must convert

the Rule 12(b)(6) motion into a motion for summary judgment. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). The Fifth Circuit, however, has held that when the nature of the supporting materials provided is limited, it is preferable not to convert the dismissal motion into a summary judgment proceeding. *Isquith ex rel. Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988).

**II. <u>12(e) Motion for More Definite Statement.</u>**

If a plaintiff fails to provide enough information to put a defendant on notice as to the claim(s) against it, a defendant may move for a more definite statement and ask the court to require the plaintiff to restate his claim with the required specificity. *See* Fed. R. Civ. P. 12(e) (2008) ("If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading"). The decision to grant a motion for a more definite statement lies within the sole discretion of the trial court. *Travelers Indem. Co. of Connecticut v. Presbyterian Healthcare Res.*, 313 F. Supp. 2d 648, 654 (N.D. Tex. 2004).

## <u>Argument</u>

**I. <u>Plaintiff's Failed to Exhaust His Administrative Remedies as to All Claims.</u>**

It is well-settled that federal courts have no jurisdiction to consider claims as to which the aggrieved party has not exhausted administrative remedies. *See e.g., Julian v. City of Houston*, 314 F.3d 721, 725–726 (5th Cir. 2002); *Smith v. Potter*, 400 Fed.Appx. 806, 811 (5th Cir. 2010) ("Exhaustion of administrative remedies is a prerequisite to federal subject matter jurisdiction."). Before a plaintiff may file an ADA claim in federal court, he must file a charge of discrimination with the EEOC within 180 days of "the alleged unlawful employment practice," or within 300 days if the charge is filed with a state or local agency. *Patton v. Jacobs Engineering Group, Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (citations omitted); 42 U.S.C. § 2000e–5(e)(1).

Because of this prerequisite, a plaintiff's claims in an ADA lawsuit are limited to those within the scope of the EEOC charge or that could "reasonably be expected to grow out of the charge of discrimination." *Id.* (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). The "crucial element of a charge of discrimination is the factual statement contained therein." *See Sims v. Louisiana State*, No. 22-2609, 2023 WL 405443, at *3 (E.D. La. Jan. 25, 2023) (internal quotations omitted). As a matter of principle, different claims under the ADA (e.g., disparate treatment, retaliation, failure to accommodate) "represent distinct categories of disability discrimination under the ADA." *Hamar v. Ashland, Inc.*, 211 F. App'x 309, 310 (5th Cir. 2006) (per curiam) ("The EEOC could not reasonably have been expected, when presented with a claim alleging disparate treatment arising on August 29, 2003, to investigate the entirely distinct failure-to-accommodate claim arising from January 2003 through June of 2003."). Thus, to properly exhaust administrative remedies, the plaintiff must provide specific facts that support each claim that would trigger the EEOC to investigate each claim.

**a. Plaintiff's EEOC Charge Does Not Allege a Disability.**

As a threshold matter, Plaintiff failed to exhaust administrative remedies as to all of his claims, because his EEOC Charge does not even allege he was disabled or that Defendant knew of a disability or regarded him as disabled. While the Charge states Plaintiff believed he was "discriminated on the basis of [his] disability," the Charge does not identify this alleged disability. Indeed, Plaintiff does not even state he was disabled or that he suffered from an impairment that affected a major life activity, or that Defendant have record of such an impairment. At most, Plaintiff alleged he had a "condition," but the Charge does not identify this condition or describe any facts that would put Defendant or the EEOC on notice of an alleged disability. Plaintiff has failed to exhaust his ADA claims in their entirety. *See Jones v. City of Dallas, Texas*, 2024 WL

3207030, at *5-6 (N.D. Tex. 2024) (plaintiff's failure to include facts regarding her disability resulted in failure to exhaust administrative remedies).

**b. Plaintiff's EEOC Charge Does Not Allege Retaliation.**

Should this Court determine Plaintiff sufficiently identified a disability in his EEOC Charge, Plaintiff nevertheless failed to exhaust his retaliation claim. Indeed, Plaintiff's EEOC Charge is limited to Plaintiff's claim that Defendant discriminated against him in December 2023.[43] The words "retaliate" or "retaliation" do not appear anywhere in the EEOC Charge. While the Charge references Plaintiff's resignation, nothing in the text of the Charge indicates Defendant terminated his employment or took any adverse employment action because of or in retaliation for Plaintiff's accommodation requests.

Because Plaintiff's EEOC Charge is silent as to retaliation, his retaliation claim can only proceed if he can show such a claim was "reasonably expected to grow out of" the EEOC's investigation. Plaintiff cannot make this showing. Plaintiff's Charge must, at least, have included factual allegations supporting the *prima facie* elements of an ADA retaliation case: (1) engagement in protected activity under the ADA; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. *Strife v. Aldine Independent School Dist.*, 138 F.4th 237, 249 (5th Cir. 2025) (citations omitted). Here, Plaintiff's EEOC Charge alleges *only* that Defendant failed to accommodate his unidentified disability.[44] Plaintiff did not check the retaliation box on the Charge form or allege any facts that can even

---

[43] Because Plaintiff's Complaint references his EEOC Charge and because the EEOC Charge is central to his claims, *Causey* permits this court to consider the EEOC Charge as part of the pleadings without converting this Motion to a summary judgment motion. Additionally, the Court can take judicial notice of the EEOC charge as a public record. *See West v. R&K Enter. Sols.,* 2024 WL 3891533, at *5 (N.D. Tex. July 19, 2024), *report and recommendation adopted,* 2024 WL 3891838 (N.D. Tex. Aug. 21, 2024) (citing King *v. Life Sch.,* 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011)). Accordingly, see Exhibit C.

[44] See Exhibit C.

remotely be construed as supporting a claim for retaliation. In fact, the Charge indicates Plaintiff's alleged termination was the result of Plaintiff's inability to perform the essential functions of the job, and not for any retaliatory reason.[45]

Accordingly, because Plaintiff failed to properly exhaust his administrative remedies, the Court should dismiss his retaliation claim with prejudice. Courts in the Fifth Circuit routinely dismiss retaliation claims for failure to administratively exhaust such claim. *See e.g., Stewart v. Smitty's Supply, Inc.,* No. CV 18-10058, 2020 WL 433362, at *7 (E.D. La. Jan. 28, 2020) (dismissing a plaintiff's claims of disability retaliation because the charge of discrimination failed to check the appropriate boxes or include sufficient allegations to support the claims); *Sudduth v. Tex. Health & Human Services Comm'n,* No. A-13-ORIGINAL CA-918-SS, 2014 WL 2858234, at *3 (W.D. Tex. June 23, 2014) (dismissing a plaintiff's claim for retaliation where the plaintiff failed to check to appropriate box and did not include any allegations of retaliation in the narrative); *Miller v. Southwestern Bell Telephone Co.*, 51 Fed.Appx. 928, 2002 WL 31415083 at *6 (5th Cir. 2002), *cert. denied*, 538 U.S. 908, 123 S.Ct. 1488 (2003) (plaintiff precluded from asserting retaliation claim where he did not disclose claim to EEOC in a charge or otherwise).

Further, the Court should not allow Plaintiff leave to amend because his ADA retaliation claim is now time-barred. Indeed, the last alleged retaliatory act (which Defendant disputes) occurred on December 12, 2023, over two years ago and well beyond the 300-day period for filing a charge with the EEOC. Accordingly, as amendment would be futile, Plaintiff's ADA retaliation claim must be dismissed with prejudice pursuant to Rule 12(b)(6). *See, e.g., Caldwell v. Enter. Prod. Co.*, 2016 WL 5372528, at *6 (S.D. Tex. Sept. 26, 2016) (dismissal with prejudice is proper

[45] Exhibit C.

for failure to timely exhaust administrative remedies); *Stripling v. Jordan Prod. Co*., LLC, 234 F.3d 863, 872-73 (5th Cir. 2000) (holding that "[i]it is within the court's discretion to deny a motion to amend if it is futile."); *Bowers v. Nicholson*, 271 Fed. Appx. 446, 449 (5th Cir. 2008) ("Rule 12(b)(6) forms a proper basis for dismissal for failure to exhaust.")(quotations omitted).

**c. Plaintiff's EEOC Charge Does Not Allege Interference.**

Plaintiff likewise failed to exhaust his ADA interference claim. An ADA interference claim, while relatively rare, is distinct from more common ADA causes of action (*i.e.*, discrimination and retaliation). *See Strife*, 138 F.4th at 251 (citing 42 U.S.C. § 12203(b)). While the Fifth Circuit has not yet articulated a test for evaluating such claims, it recently identified at least three requirements to state a cause of action for such a claim: (1) coercion, intimidation, threats, or interference toward an individual; (2) on the basis of that individual's exercise or enjoyment, or having exercised or enjoyed, or aiding or encouraging others in exercising or enjoying; (3) any right protected under the ADA. *Id.*

Nothing in the EEOC Charge can be construed as "interference" as contemplated by the ADA. Indeed, the words "interference" or "interfered with" do not appear anywhere in the EEOC Charge, nor are there any allegations regarding Defendant's actions in coercing, threatening, intimidating, or interfering with Plaintiff. While the Charge alleges Richardson "constantly asked [Plaintiff] for an update on [his] condition and ordered [him] to go back to the doctor" Plaintiff does not allege Richardson (or any other individual employed by Defendant) coerced, intimidated, threatened, or interfered with his ability to exercise his rights under the ADA. Instead, the Charge concedes it was *Defendant* who directed Plaintiff to request accommodation through a third party, which he did successfully.[46]

[46] *See* Exhibit C.

In other words, Plaintiff's EEOC Charge alleges Defendant initiated the interactive process after Plaintiff requested an accommodation, and Defendant continued to engage in the interactive process as required by the ADA. The EEOC's investigation into these allegations cannot reasonably be expected to grow into an investigation into ADA interference. Plaintiff's ADA interference claim exceeds the scope of his EEOC Charge and, as a result, Plaintiff may not prosecute such a claim in federal court.

Plaintiff cannot cure this defect by amendment because his interference claim, like his retaliation claim, is time-barred. Indeed, all of the alleged incidents that form the basis of Plaintiff's interference claim occurred prior to Plaintiff's alleged constructive termination on December 12, 2023. Thus, Plaintiff had until October 7, 2024 to amend his EEOC Charge or file a separate charge for this claim. Accordingly, Plaintiff's ADA interference claim must be dismissed with prejudice pursuant to Rule 12(b)(6).

**d. Plaintiff's Discrimination Claim Must be Dismissed to The Extent it Exceeds the Scope of His EEOC Charge.**

To the extent the Court finds Plaintiff sufficiently alleged a disability in the EEOC Charge, Plaintiff's discrimination claim must be limited to the *only* timely claims asserted in his EEOC Charge. There, Plaintiff identifies the earliest date of discrimination as December 1, 2023 and the latest date as December 12, 2023.[47] Likewise, the factual narrative in the Charge is limited to events that occurred in December 2023: Plaintiff's accommodation request, Defendant's denial, and Plaintiff's resignation.[48] Plaintiff's Complaint, however, seemingly bases his discrimination claim on discrete events that occurred in May and June 2023. In particular, Plaintiff alleges Richardson began harassing him in May 2023 and forced him to drive over high bridges despite

[47] Exhibit C.
[48] Exhibit C.

his accommodation.[49] Plaintiff also alleges that in June 2023, he attempted to engage in the interactive process and subsequently received negative performance reports.[50] Plaintiff failed to include these allegations in his EEOC Charge.

Under the express statutory limitations, the 300-day lookback period for Plaintiff's April 11, 2024 EEOC Charge extends to June 16, 2023. Accordingly, to the extent Plaintiff's discrimination claim is based on events or conduct that occurred prior to June 16, 2023, the Court should dismiss those claims for Plaintiff's failure to timely raise these allegations in the EEOC Charge.

## III. <u>Even if Administratively Exhausted, Plaintiff Has Not Plausibly Alleged His Claims.</u>

In the event the Court finds Plaintiff sufficiently exhausted his administrative remedies, all of Plaintiff's claims remain substantively deficient. As explained herein, the Complaint repeatedly asserts sweeping legal conclusions without any factual support and fails to adequately plead the essential elements of his claims. As written, the Complaint is a textbook "shotgun" pleading that fails to give Defendants adequate notice of the claims against it and the factual grounds upon which those claims rest. *Sistrunk v. Haddox*, 2021 WL 1235371, at *8 (W.D. La. Mar. 31, 2021). Rule 8 requires a complaint to "do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws." *Id*. (quoting *Anderson v. United States Dep't of Hous. and Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008)).

### a. Plaintiff Fails to Plausibly Allege an ADA Discrimination Claim.

Plaintiff's first cause of action purports to bring a claim for "discrimination" under the ADA, but Plaintiff simply incorporates every allegation in the Complaint by reference, recites the

---

[49] Rec. Doc. 1, ¶¶ 24-31.
[50] *Id*. at ¶¶ 29-21.

anti-discrimination provision of the ADA, and states: "Defendant violated this section as set herein." [51] This is the very type of "formulaic recitation of the elements of a cause of action" coupled with an "unadorned, the defendant-unlawfully-harmed-me accusation" the Supreme Court has rejected. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. This, alone, warrants dismissal.

Moreover, it is unclear whether the Complaint alleges a failure-to-accommodate claim, a harassment claim, or a straight discrimination claim in the first cause of action, all of which are distinct claims with different elements, implicating different defenses. Plaintiff's vague allegations, conclusory statements, and unspecified claims are insufficient to put Defendant on notice of the claims being alleged against it.

Specifically, the Complaint states he suffered harassment and unfair treatment, but aside from his purported constructive termination, the Complaint is devoid of factual detail supporting any cause of action for discrimination. Plaintiff fails to allege any specific acts or omissions constituting the alleged discrimination, the alleged adverse employment action(s) that forms the basis of the discrimination claim, the identity of the decisionmaker(s) responsible for the discriminatory act(s), or the date(s) on which the allegedly discriminatory act(s) occurred. Instead, the Complaint repeatedly asserts unsupported legal conclusions. For example, Plaintiff alleges "the reason to terminate Plaintiff was discriminatory and retaliatory in nature" but Plaintiff fails to describe how or why his termination was discriminatory.[52] Likewise, Plaintiff asserts "Defendant treated Plaintiff this way solely due to his disability" but does not allege any facts establishing how he alleges Defendant treated him.[53]

At best, Plaintiff only offers broad legal conclusions, not specific facts regarding each of

---

[51] *Id*. at ¶¶ 70-72.
[52] *Id*. at ¶ 52.
[53] *Id*. at ¶ 57.

the essential elements of his claims. This is wholly insufficient. *See Cicalese v. Univ. of Tex. Med. Branch,* 924 F.3d 762, 765 (5th Cir. 2019) ("[A]lthough plaintiffs do not 'have to submit evidence to establish a prima facie case ... at this stage, [they must] plead sufficient facts on all of the ultimate elements ... to make [their] case plausible.'") (quoting *Chhim v. Univ. of Tex. at Austin,* 836 F.3d 467, 470 (5th Cir. 2016)). Plaintiff's discrimination claim must be dismissed.

**b. Plaintiff's Retaliation Claim**

Plaintiff's ADA retaliation claim, set forth in Paragraphs 73 through 76, suffers from the same pleading deficiencies. Instead of identifying facts supporting the essential elements of his retaliation claim, Plaintiff merely "realleges each and every allegation made in the above paragraphs," states the anti-retaliation section of the ADA, and concludes that "Defendant violated this section as set forth herein."[54] This is wholly insufficient.

To state a claim for ADA retaliation, Plaintiff must allege: (1) engagement in protected activity under the ADA; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. *Strife*, 138 F.4th at 249. Plaintiff's second cause of action identifies none of these elements. In fact, at most, the Complaint alleges Plaintiff informed Defendant he could not perform the essential functions of the job and as a result, Plaintiff's employment ended. Plaintiff cannot maintain an ADA retaliation claim based on these facts.

Moreover, and consistent with the Complaint's imprecise pleading, Plaintiff fails to identify which accommodation request (or other activity) constitutes the purported protected activity that forms the basis of this claim. The Complaint likewise fails to identify what specific retaliatory action Defendant allegedly made, the identity of the individual(s) who took this action, whether

---

[54] *Id*. at ¶¶ 73-76.

such person had knowledge of Plaintiff's protected activity, and any facts establishing a causal connection between the protected activity and the adverse action. Without this information, Defendant cannot ascertain whether Plaintiff's retaliation claim is premised on the same facts as his discrimination claim, or on some other factual basis. Plaintiff's retaliation claim must be dismissed.

**c. Plaintiff Cannot Plausibly Assert an ADA Interference Claim.**

Plaintiff's interference claim requires Plaintiff to allege sufficient facts showing: (1) Defendant coerced, intimidated, threatened, or interfered with; (2) on the basis of Plaintiff's exercise or enjoyment, or having exercised or enjoyed; (3) any right protected under the ADA. *Strife*, 138 F.4th at 251. As explained herein, the Complaint is devoid of any factual detail regarding Defendant's alleged interference.

Like Plaintiff's discrimination and retaliation claims, Plaintiff's ADA interference claim, set forth in Paragraphs 77 through 80, is nothing more than a formulaic recitation of the anti-interference provision of the ADA.[55] Plaintiff states, without detail, that "Defendant violated this section as set forth herein." The Complaint does not identify which facts, if any, support his interference claim, or what employment action(s) constitute "interference" as contemplated by the ADA. Merely alleging Defendant "interfered with" his ADA rights is not sufficient.

While Plaintiff alleges Richardson "incessantly" asked Plaintiff for updated on his condition, and "demanded" Plaintiff go back to his doctor for an update, allegations that Defendant engaged in the interactive proves as required by the ADA do not, and cannot, support an interference claim. *See Strife*, 138 F.4th at 252 ("it would accordingly be difficult to construe [defendant's] continued engagement in an interactive process designed to secure [plaintiff's]

---

[55] *Id.*, at ¶¶ 77-80.

requested accommodation as 'interference' in violation of the ADA."). Accordingly, Plaintiff's ADA interference claim, based solely on Defendant's continued engagement in the interactive process, must be dismissed.

## IV. Plaintiff Should Be Required to Amend and Re-Plead His Claims.

While Defendant believes dismissal is the appropriate remedy, in the alternative, the Court should order Plaintiff to re-plead his causes of action. *See* Fed. R. Civ. P. 12(e) ("If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading").

As explained herein, Plaintiff's imprecise pleading renders each cause of action vague and ambiguous, making it impossible for Defendant to understand the claims alleged against it and prepare an appropriate response. The Complaint is littered with deficiencies. For example, Defendant cannot discern the legal theory underlying Plaintiff's discrimination claim. Plaintiff also seemingly asserts vague, unspecified theories without any factual basis. In Paragraph 65, Plaintiff claims Defendant "unlawfully discriminated against, humiliated, degraded, and belittled Plaintiff and retaliated against him for *seeking to permit him to seek leave* as is his right under the law."[56] Yet, nowhere in the Complaint is any allegation regarding any request for (or denial of) any type of leave. Likewise, Plaintiff states, without further detail, "[t]he above are just some of the ways the Defendant discriminated and retaliated against the Plaintiff while employing him."[57]

These impermissibly vague statements fail to provide Defendant the fair notice to which it is entitled under Rules 8 and 12. Accordingly, in the event the Court does not dismiss the

---

[56] *Id*. at ¶ 65.
[57] *Id*. at ¶ 66.

Complaint, Plaintiff should be required to provide a more definite statement of his claims to permit Defendant to provide an appropriate response.

**Conclusion**

Plaintiff's claims are facially implausible, as he has failed to exhaust his administrative remedies. These claims are now time-barred, and as a result, amendment would be futile. However, even if Plaintiff administratively exhausted his claims, the Complaint, which comingles the causes of action, offers nothing more than vague statements and legal conclusions without supporting factual detail. Defendant respectfully urges this Court to dismiss Plaintiff's claims in their entirety, or, alternatively, order Plaintiff to re-plead his claims with the requisite factual detail necessary to provide Defendant fair notice of the claims alleged against it.

Respectfully submitted,

/s/ *Sara Grace Sirera*
Hal D. Ungar, La. Bar No. 31344
Sara Grace Sirera, La. Bar No. 38405
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
701 Poydras Street, Suite 3500
New Orleans, LA 70139
Telephone: 504.648.3840
Facsimile: 504.648.3859
Email: hal.ungar@ogletreedeakins.com
sara.sirera@ogletreedeakins.com

*Attorneys for Defendant, AmeriGas Propane, L.P.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served on all counsel of record via the Court's Electronic Filing System.

This 26th day of June 2026.

*/s/ Sara Grace Sirera*
SARA GRACE SIRERA