**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| CHARLES D. WALKER,<br><br>Plaintiff,<br><br>vs.<br><br>AMERIGAS PROPANE, L.P.,<br><br>Defendant. | Case No.: 2:26-cv-726 (EEF) (DPC)<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS AND/OR RULE 12(e) MOTION FOR MORE DEFINITE STATEMENT** |

## PRELIMINARY STATEMENT

Defendant AmeriGas Propane, L.P.'s (hereinafter "Defendant" or "AmeriGas") motion asks the Court to decide disputed merits questions from Defendant's perspective while disregarding the detailed chronology pled in the Complaint. The Complaint alleges that Plaintiff Charles Walker (hereinafter "Plaintiff" or "Walker") worked successfully as an AmeriGas driver and service technician for approximately fifteen (15) years; developed anxiety and acrophobia that substantially limited driving and traveling over high bridges; supplied medical documentation; requested a narrow route accommodation; and received that accommodation. See ECF Docket Entry 1 ¶¶ 14–23. AmeriGas then reversed course, assigned bridge-dependent stops, recorded incomplete deliveries against him, required more documentation, denied the renewed accommodation, and –days or weeks later – gave him a return-to-full-duty-or-resign ultimatum and treated him as resigned when he could not violate his medical restrictions. Id. ¶¶ 24–59. Those allegations state plausible claims for failure to accommodate and disability discrimination, retaliation for requesting accommodation, and interference with his rights under the Americans with Disabilities Act ("ADA").

Defendant's exhaustion argument likewise fails. The Charge of Discrimination ("Charge") filed with the United States Equal Employment Opportunity Commission ("EEOC") identified disability discrimination, doctor's notes, a medically based request not to drive over high bridges because doing so exacerbated Walker's condition, repeated demands for updates, denial of accommodation, and the full-duty-or-resign ultimatum. See ECF Docket Entry 7-5. A reasonable investigation of that narrative necessarily would examine what the condition was, what the medical notes said, why the accommodation was denied, and whether AmeriGas ended the employment relationship because Walker requested and needed the accommodation. Administrative charges are construed by substance, not technical labels or checkboxes. See Pacheco v. Mineta, 448 F.3d 783, 788–89 (5th Cir. 2006). And exhaustion is a non-jurisdictional claim-processing requirement, not a limit on this Court's subject-matter jurisdiction. See Fort Bend Cnty. v. Davis, 587 U.S. 541, 548–51 (2019).

The Fifth Circuit's recent published decision in Strife v. Aldine Independent School District is especially instructive. See 138 F.4th 237 (5th Cir. 2025). Strife reversed a Rule 12(b)(6) dismissal because the complaint, considered as a whole, plausibly alleged a failure to accommodate and a breakdown in the interactive process. Id. at 243–46. It reiterated that a failure-to-accommodate claim does not require an additional adverse employment action and that an accommodation need not be limited to changing an essential job function. Id. at 246. Here, Plaintiff pleads more: an accommodation previously implemented, a later denial, negative performance consequences, and termination. The motion should therefore be denied.

At an absolute minimum, any curable pleading concern should result in leave to amend, not dismissal with prejudice.

## RELEVANT ALLEGATIONS AND PROCEDURAL BACKGROUND

### A. Walker's disability, notice, and successful accommodation

Walker began working for AmeriGas in approximately December 2008 as a driver and service technician. See ECF Docket Entry 1 ¶ 14. He alleges that he performed loyally, efficiently, and reliably for more than a decade. Id. ¶ 15. Between late 2022 and early 2023, he developed anxiety and informed managers Horace Fontenot and James Richardson that he needed medical attention. Id. ¶ 16. In March 2023, a physician diagnosed acrophobia and instructed him not to drive over high bridges until the condition was resolved or managed. Id. ¶ 17. Walker communicated those findings and requested routes that did not require high bridges; critically, AmeriGas approved the request. Id. ¶¶ 18-19.

The condition persisted. Walker pursued counseling, medication, therapy, and follow-up care. Id. ¶¶ 20-22. His physicians extended the bridge restriction and specifically requested continuation of the workplace accommodation. Id. Walker supplied the updated medical instructions, requested continuation or extension, and AmeriGas again approved it. Id. ¶ 23.

These allegations plausibly establish a mental impairment, substantial limitations involving driving, traveling, working, concentrating, and thinking around elevated roadways, actual employer notice, and the facial feasibility of the requested route adjustment. See Id. ¶¶ 17-23, 62-64.

### B. Withdrawal of the accommodation and negative consequences

Beginning in approximately May 2023, Richardson allegedly demanded repeated updates, pressured Walker into additional medical visits, and directed him to make deliveries across the Mississippi River bridge despite the approved restriction and AmeriGas' knowledge of his diagnosis. Id. ¶¶ 24–28.

Between June and September, Walker repeatedly sought reconsideration when bridge-dependent stops appeared on his schedule. Id. ¶ 29. AmeriGas allegedly told him to leave those stops incomplete because nothing could be done, then issued negative performance reports for those very incomplete deliveries. Id. ¶¶ 30–31.

The pleaded sequence closely resembles the risk identified in Loulseged v. Akzo Nobel Inc.; an employer may not prolong or manipulate the accommodation process, document the employee's resulting difficulties, and use those difficulties to justify termination. See 178 F.3d 731, 737 n.6 (5th Cir. 1999); see also Strife, 138 F.4th at 244–45.

**C. Renewed documentation, denial, ultimatum, and termination**

In October 2023, AmeriGas instructed Walker to bring his truck to Thibodaux by crossing a high bridge. See ECF Docket Entry 1 ¶ 32. When he reminded AmeriGas of his restriction, it demanded another medical update and required a renewed request through a third-party administrator. Id. ¶¶ 3-–34. Walker complied. Id. ¶ 34. In November, the administrator informed him that AmeriGas had denied the accommodation despite the formal medical order and AmeriGas' prior approval of the same route restriction. Id. ¶¶ 35–36. The Complaint alleges no meaningful bilateral discussion about alternatives before the denial. Id. ¶ 37.

In December, Human Resources representative Darlene Tyson gave Walker an immediate choice: return to full duties or resign. Id. ¶¶ 42-44. Under the pressure of losing his only income, he initially said he would return; after reflecting on the medical restriction and the severe symptoms bridge driving caused, he promptly called back and explained that he could not safely do so. Id. ¶¶ 45-47. Tyson responded that AmeriGas considered him resigned, even though he expressly denied any intent to resign. Id. ¶¶ 48-49.

The Complaint alleges that AmeriGas effectively terminated him even though he could perform his job with a reasonable route accommodation. Id. ¶¶ 50–59, 63.

**D. Administrative charge and present motion**

Walker filed the Charge and received a right-to-sue notice on January 7, 2026. Id. ¶¶ 5–6. He timely filed this action exactly ninety (90) days later, on April 7, 2026. The Complaint asserts ADA discrimination under 42 U.S.C. § 12112, retaliation under § 12203(a), and interference under § 12203(b). Id. ¶¶ 70–80.

AmeriGas moved to dismiss every claim, principally contending that the charge did not name a diagnosis, did not use the words retaliation or interference, and did not encompass events before June 16, 2023. It alternatively challenges the factual detail in each count and seeks a more definite statement.

## LEGAL STANDARD

A Rule 12(b)(6) motion tests the sufficiency of the pleading, not whether the plaintiff will ultimately prevail. The Court accepts well-pleaded facts as true, views them in the light most favorable to the plaintiff, and draws reasonable inferences in his favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Cicalese v. Univ. of Tex. Med. Branch, 924 F.3d 762, 765-68 (5th Cir. 2019). The Complaint need only contain enough factual matter to make relief plausible, not probable. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556–57 (2007). A discrimination plaintiff need not plead a McDonnell Douglas[1] *prima facie* case. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-12 (2002); see also Cicalese, 924 F.3d at 767–68. Requiring evidentiary particulars at the pleading stage improperly heightens Rule 8's standard. See Fed. R. Civ. P. 8.

[1] See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

The Court ordinarily confines Rule 12(b)(6) review to the Complaint and documents attached to it; documents attached to a motion may be considered only when they are referred to in the complaint, central to the claim, and authentic or undisputed. See Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498–99 (5th Cir. 2000); see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010). Judicial notice establishes only facts not subject to reasonable dispute. See Fed. R. Evid. 201. If the Court considers other matter, Rule 12(d) requires conversion and a reasonable opportunity to present pertinent material. See Fed. R. Civ. P. 12(d).

Rule 12(e) is narrower still; it applies only when a pleading is so vague or ambiguous that the responding party cannot reasonably prepare a response. See Fed. R. Civ. P. 12(e). It is not a device to obtain evidentiary detail available through discovery. See Mitchell v. E-Z Way Towers, Inc., 269 F.2d 126, 132 (5th Cir. 1959).

## ARGUMENT

## I. THE CHARGE EXHAUSTED THE CLAIMS PLEADED HERE

### A. Exhaustion is nonjurisdictional, and the charge is construed by its substance

AmeriGas opens by suggesting the Court lacks jurisdiction over claims outside the charge, but Fort Bend forecloses that characterization. Title VII's charge-filing requirement, which the ADA incorporates through 42 U.S.C. § 12117(a), is a mandatory but non-jurisdictional claim-processing rule. See Fort Bend, 587 U.S. at 548–51. The Court therefore possesses subject-matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 12117; the issue is only whether the claims fall within the properly invoked administrative process.

That inquiry is deliberately practical.

A civil case may include discrimination described in the charge and discrimination that could reasonably be expected to grow out of the agency's investigation. See Pacheco, 448 F.3d at 788-89; see also Patton v. Jacobs Eng'g Grp., Inc., 874 F.3d 437, 443 (5th Cir. 2017). Courts construe charges liberally because employees commonly prepare them without counsel. See Pacheco, 448 F.3d at 788. The analysis is fact-intensive, looking slightly beyond the four corners to the charge's substance rather than demanding precise legal labels. Id. at 789. The factual statements, not a checkbox, is the crucial element. See Sanchez v. Standard Brands, Inc., 431 F.2d 455, 462–66 (5th Cir. 1970).

**B. The charge adequately identified disability discrimination and the accommodation dispute**

The Charge did not present an unexplained workplace disagreement. It identified disability as the basis of discrimination and alleged that Walker supplied doctor's notes, asked not to drive over high bridges because doing so exacerbated his condition, was repeatedly required to update the employer, had the requested accommodation denied, and was told to work full duty or resign. See ECF Docket Entry 7-5. It also identified the ADA and described the denial of reasonable accommodation as unlawful. Id. A reasonable investigator reading those facts would request the doctor's notes, identify anxiety and acrophobia, examine the functional bridge-driving restriction, assess employer notice, and investigate why AmeriGas first accommodated and later denied the restriction.

Neither the ADA nor the EEOC's charge regulation requires a claimant to write a clinical diagnosis into the charge. A charge need only provide a clear and concise factual statement of the alleged unlawful practices. See 29 C.F.R. § 1601.12(a)(3). Here, the medical restriction, precipitating condition, requested accommodation, denial, and ultimatum were all present.

AmeriGas' argument that the charge failed to allege its knowledge is contradicted by the same narrative: an employer that received doctor's notes, repeatedly requested updates, processed an accommodation request, and denied that request necessarily was placed on notice that disability and functional limitations were at issue.

At minimum, the scope of a reasonable investigation cannot be resolved against Walker on Defendant's characterization of the charge.

**C. Retaliation reasonably grows from the charge's facts**

The retaliation claim arises from the very sequence the charge reports: repeated requests for a disability accommodation, denial, and a full-duty-or-resign ultimatum ending the employment relationship. Requesting a reasonable accommodation is protected activity. See Tabatchnik v. Cont'l Airlines, 262 F. App'x 674, 676 (5th Cir. 2008).

An investigation into why AmeriGas delivered that ultimatum after the accommodation requests would necessarily examine whether the requests caused the adverse action. The omission of the word 'retaliation' or a retaliation checkbox does not erase the operative facts. Pacheco and Sanchez require substance over label.

Hamar v. Ashland, Inc., on which AmeriGas relies, is materially different from the facts present here. See 211 F. App'x 309 (5th Cir. 2006). Hamar involved separate categories of alleged discrimination arising from different incidents months apart, specifically an earlier failure to accommodate and a later disparate-treatment event. Id. at 310-11.

Meanwhile, Walker's charge describes one continuous accommodation controversy culminating in the full-duty-or-resign decision. No new actors, workplace episode, or unrelated theory are present. The legal theory of retaliation is a permissible characterization of the consequences already stated in the charge.

**D. Interference likewise falls within the expected investigation**

Section 12203(b) prohibits coercing, intimidating, threatening, or interfering with an individual in the exercise or enjoyment of ADA rights. The charge's allegation that AmeriGas denied a medically supported accommodation and demanded full-duty work or resignation is not collateral to that prohibition; it is the alleged coercive mechanism.

A reasonable EEOC investigation would ask whether the ultimatum obstructed Walker's ability to obtain and use the accommodation and whether he was pressured to relinquish ADA rights as the price of keeping his job. The interference count therefore does not depend on a new factual episode omitted from the charge.

**E. Earlier events are timely background; the actionable denial and termination are independently timely**

AmeriGas also seeks to excise all events before June 16, 2023. But the Complaint's core actionable decisions occurred later: bridge-dependent assignments and resulting performance reports continued from June through September; AmeriGas required renewed documentation in October; denied the accommodation in November; and imposed the full-duty-or-resign ultimatum and termination in December. See ECF Docket Entry 1 ¶¶ 29–59. Those discrete acts fall within the period AmeriGas identifies.

The March-through-May events remain relevant even if no separate damages may be recovered for an independently untimely act.[2] Earlier events may be used as background

[2] Plaintiff notes, however, that the continuing violations doctrine would be fully applicable here. See Pegram v. Honeywell, Inc., 361 F.3d 272, 279 (5th Cir. 2004) ("the continuing violations doctrine is equitable in nature and extends the limitations period on otherwise time barred claims only when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts"); see also Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 328 (5th Cir. 2009) ("This 'continuing violation' doctrine is limited in three ways. First, the plaintiff must demonstrate that the 'separate acts' are related, or else there is no single violation that encompasses the earlier acts. […]. Second, the violation must be continuing; intervening action

evidence supporting a timely claim. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). The earlier diagnosis, notice, requests, and approvals explain AmeriGas' knowledge, the accommodation's feasibility, the change in treatment, and the later decision's context.

## II. THE COMPLAINT PLAUSIBLY ALLEGES DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE

### A. The Complaint alleges disability, knowledge, qualification, and denial of a reasonable accommodation

A failure-to-accommodate claim requires that (1) the plaintiff be a qualified individual with a disability; (2) the employer know the disability and its consequential limitations; and (3) the employer fail to make reasonable accommodations for the known limitations. See Strife, 138 F.4th at 243 (quoting Amedee v. Shell Chem., L.P., 953 F.3d 831, 837 (5th Cir. 2020)). The Complaint pleads each element with concrete facts.

*First*, it alleges a diagnosed anxiety disorder and acrophobia that substantially limit driving, traveling, working, concentrating, and thinking when elevated roadways or high bridges are involved. See ECF Docket Entry 1 ¶¶ 16–23, 62–64. The ADA Amendments Act directs that disability be construed broadly, that an impairment need substantially limit only one major life activity, and that an episodic impairment counts when active. See 42 U.S.C. § 12102(4)(A), (C)-(D). Whether the limitations are ultimately substantial is a fact question; the allegations of panic,

by the employer, among other things, will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window. […]. Third, the continuing violation doctrine is tempered by the court's equitable powers, which must be exercised to 'honor Title VII's remedial purpose 'without negating the particular purpose of the filing requirement''"); Heath v. Bd. of Supervisors for the S. Univ. & Agric. & Mech. Coll., 850 F.3d 731, 740 (5th Cir. 2017) (continuing violation where "'incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers'"). Here, the conduct complained of deals with Walker's request for an accommodation and extended over a period of time. Since all of the allegations deal with this same request, the continuing violations doctrine applies.

extreme anxiety, paranoia, medical restrictions, medication, therapy, and an inability to drive an oversized delivery vehicle over high bridges plausibly clear the pleading threshold.

*Second*, AmeriGas allegedly had actual notice. Walker informed two managers, supplied repeated physician instructions, sought and received approval, provided updated documentation, and completed a renewed third-party process. See ECF Docket Entry 1 ¶¶ 16–23, 29, 33-37, 42-44. The motion's demand for the name of every speaker and date of every communication disregards the managers actually named and seeks discovery detail, not Rule 8 notice.

*Third*, Walker plausibly alleges he was qualified. Fifteen (15) years of successful service permits the inference that he possessed the required skill and could perform the position. Id. ¶¶ 14–15, 63. More specifically, he alleges that a route adjustment allowed him to continue working and that AmeriGas actually implemented the adjustment. Id. ¶¶ 18–23. Prior successful use of the requested accommodation is powerful plausibility evidence that it was reasonable on its face. Whether crossing a high bridge was an essential function for every assignment, whether equivalent routes were available, and whether reassignment of particular stops caused undue hardship require evidence about actual dispatch operations, not a pleading-stage inference against Walker.

**B. Essential-function and undue-hardship defenses cannot be resolved from maps or advocacy**

The ADA defines a qualified individual as one who can perform the essential functions with or without reasonable accommodation. See 42 U.S.C. § 12111(8). The employer's judgment and any preexisting written job description receive consideration, but the inquiry remains fact-specific. Id.; see also E.E.O.C. v. LHC Grp., Inc., 773 F.3d 688, 697–700 (5th Cir. 2014). The Complaint does not concede that every delivery route requires a high bridge. It alleges the opposite: AmeriGas twice approved routes avoiding high bridges and permitted him to work

under that arrangement. See ECF Docket Entry 1 ¶¶ 18-23. Defendant's assertion that the restriction eliminated an essential function is an inference from facts not pled.

The maps attached to Defendant's motion do not resolve the issue. Even if the Court notices the existence and general location of roads, it cannot notice what route Walker actually took, whether he drove, the type and elevation of a bridge, the symptoms produced by an oversized propane truck versus another vehicle, the frequency of high-bridge assignments, the availability of alternative stops, or the operational burden of a route adjustment. Those are disputed adjudicative facts. Nor does the geography between a residence and workplace prove the essential functions of a delivery position.

If Defendant asks the Court to accept its factual interpretation of the maps, Rule 12(d) requires conversion and an opportunity for discovery. The proper Rule 12 course is to credit the pleaded facts.

Reasonableness and undue hardship are likewise unsuitable for dismissal on this record. Walker must identify a plausible accommodation; he did so. The employer bears the burden of proving undue hardship after a facially reasonable accommodation is shown. See U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 401-02 (2002); see also Riel v. Elec. Data Sys. Corp., 99 F.3d 678, 682-83 (5th Cir. 1996).

AmeriGas' prior implementation supports reasonableness and creates, at minimum, a factual dispute. Defendant cannot establish undue hardship through unsworn assertions in a memorandum.

**C. The interactive-process allegations strengthen, rather than defeat, the claim**

An accommodation request triggers the employer's duty to participate in a good-faith, bilateral interactive process. See Taylor v. Principal Fin. Grp., Inc., 93 F.3d 155, 165 (5th Cir.

1996); see also E.E.O.C. v. Chevron Phillips Chem. Co., 570 F.3d 606, 621 (5th Cir. 2009). When the employer's unwillingness to engage in good faith leads to a failure to accommodate, the ADA is violated. See Cutrera v. Bd. of Supervisors of La. State Univ., 429 F.3d 108, 112 (5th Cir. 2005).

AmeriGas portrays any use of a third-party administrator as conclusive good faith. But the Complaint alleges that Walker complied, provided current medical information, obtained a formal medical order, and was denied without any meaningful discussion of alternatives. See ECF Docket Entry 1 ¶¶ 32–37. That is a plausible breakdown attributable to the employer.

Strife rejects the Defendant's approach. It directs courts to consider the complaint as a whole and recognizes liability where the alleged process was obstructive, needlessly prolonged, or conducted without meaningful evaluation. See 138 F.4th at 243-46. It also confirms that reasonable accommodations are not restricted to modifications of essential job functions and that failure to accommodate needs no additional adverse action. See Id. at 246; see also Feist v. La., Dep't of Just., 730 F.3d 450, 453 (5th Cir. 2013).

Here, there was an actual denial followed by termination. The discrimination count is thus more than plausible.

**D. The alleged termination independently supports disability discrimination**

The Complaint also alleges disparate treatment: AmeriGas ended Walker's employment because of his disability and need for accommodation. See ECF Docket Entry 1 ¶¶ 42-59, 70-72. It alleges disability, qualification with a reasonable accommodation, termination, and causation supported by the sequence from renewed request to denial to ultimatum. Id. The asserted characterization of the separation as a voluntary resignation contradicts the pleaded fact that Walker expressly denied resigning. Id. ¶¶ 48–50.

On a Rule 12(b)(6) motion, the Court must credit Walker's version. Whether AmeriGas honestly treated the exchange as a resignation is a merits-based dispute.

**III. THE RETALIATION CLAIM IS PLAUSIBLE**

ADA retaliation requires protected activity, an adverse employment action, and a causal connection. See Strife, 138 F.4th at 249 (citing Seaman v. CSPH, Inc., 179 F.3d 297, 301 (5th Cir. 1999)). But these are evidentiary elements, not a heightened pleading checklist. See Cicalese, 924 F.3d at 767-68.

Walker alleges repeated requests for and efforts to preserve an ADA accommodation – protected activity – followed by negative performance reports, denial, a full-duty-or-resign ultimatum, and termination. See ECF Docket Entry 1 ¶¶ 18–23, 27–37, 42–59, 73–76.

Causation is plausibly supported by timing and context. AmeriGas allegedly insisted on renewed documentation in October, denied the request in November, and terminated Walker in December when he said he could not disregard the restriction. Id. ¶¶ 32–52. Close temporal proximity may support a causal inference at the prima facie stage. See Burton v. Freescale Semiconductor, Inc., 798 F.3d 222, 240–41 (5th Cir. 2015). The same HR representative who gave the ultimatum allegedly referenced the full-duty issue, and the Complaint expressly alleges the termination followed continuing accommodation requests. See ECF Docket Entry 1 ¶¶ 42-52, 59. Defendant's competing explanation – that Walker voluntarily resigned because he could not perform the job – requires accepting Defendant's facts and drawing inferences against the nonmovant.

The motion's demand that the Complaint plead the date, author, and wording of every negative report is misplaced. The reports are one alleged retaliatory consequence within a pleaded chronology, and termination is independently adverse. Rule 8 requires fair notice, which

the names, approximate dates, requests, denial, ultimatum, and termination provide. Discovery will test documentary particulars and but-for causation.

**IV. THE INTERFERENCE CLAIM IS PLAUSIBLE AND IS NOT DEFEATED BY STRIFE**

Section 12203(b) makes it unlawful to coerce, intimidate, threaten, or interfere with an individual in the exercise or enjoyment of an ADA right, or on account of having exercised or enjoyed that right.

The Fifth Circuit frames the claim around (1) coercion, intimidation, threats, or interference; (2) on the basis of the individual's exercise or enjoyment, past exercise or enjoyment, or aid to another; (3) of an ADA-protected right. See Strife, 138 F.4th at 251-52. The prohibition is broader than retaliation and protects access to ADA rights themselves.

The Complaint identifies concrete interference. AmeriGas allegedly ordered Walker to perform medically contraindicated bridge driving after approving the restriction; left bridge stops on his schedule; documented the resulting incomplete deliveries; demanded repeated medical updates; denied the renewed request without meaningful dialogue; and conditioned continued employment on abandoning the restriction and returning immediately to full duty. See ECF Docket Entry 1 ¶¶ 24–37, 42–50, 77–80. A threat of job loss unless an employee relinquishes a requested accommodation plausibly constitutes coercion, intimidation, or interference. The allegation does not rest merely on AmeriGas' participation in an ordinary interactive process; it rests on alleged pressure and an ultimatum that obstructed the right to accommodation.

Strife's outcome does not compel dismissal here. In Strife, the Fifth Circuit affirmed summary judgment after an evidentiary record showed that the employer pursued clarification, sought an examination for a supported reason, continued the process, and ultimately granted the accommodation. See 138 F.4th at 251–52. It did not hold that an employer is categorically

insulated whenever it labels its conduct an interactive process. Indeed, Strife's pleading analysis requires reasonable inferences from the complaint as a whole. Id. at 243–46.

Walker alleges an actual denial and a full-duty-or-resign ultimatum, not a neutral request for clarification followed by approval. Those pleaded facts must therefore be tested through discovery.

## V. THE COMPLAINT IS NOT AN IMPERMISSIBLE 'SHOTGUN' PLEADING, AND RULE 12(e) RELIEF IS UNWARRANTED

The eleven-page Complaint tells one chronological story against one defendant, identifies the principal decisionmakers, supplies approximate dates, identifies the requested accommodation and medical limitation, and describes the denial, adverse reports, ultimatum, and termination. See ECF Docket Entry 1 ¶¶ 14–69. Each of three short counts identifies a statutory theory and incorporates the common facts. Id. ¶¶ 70–80. Rule 10(c) expressly permits adoption by reference, and Rule 8(d)(2) permits alternative theories. Incorporating a shared factual chronology avoids repetition; it does not make the pleading unintelligible.

AmeriGas' own twenty-two (22) page memorandum confirms that it understands the claims. It organizes the chronology, quotes the specific allegations, identifies failure to accommodate and termination as the discrimination theories, and separately attacks retaliation and interference. A party capable of presenting that detailed response can reasonably frame an answer. Rule 12(e) is not available merely because Defendant wants the Complaint to specify which sentence proves each element or to commit to only one discrimination theory. See Mitchell, 269 F.2d at 132.

Any stray pronoun or imprecise phrase is an obvious drafting error, not grounds to dismiss with prejudice. The identity of the employee, requested accommodation, defendant, managers, HR representative, and challenged decisions is unmistakable.

If the Court desires separate subcounts for failure to accommodate and termination, that is a curable organizational matter and does not justify Rule 12(e) relief when the present pleading gives fair notice.

**VI. ALTERNATIVELY, PLAINTIFF SHOULD RECEIVE LEAVE TO AMEND**

If the Court finds any claim insufficiently specific, Plaintiff respectfully requests leave pursuant to Rule 15 to file an amended complaint that separates the discrimination theories, attaches or quotes the charge, identifies the timely discrete acts, corrects scrivener's errors, and maps factual paragraphs to each count. See Fed. R. Civ. P. 15(a)(2). Leave should be freely given when justice requires. Id. Dismissal with prejudice is ordinarily inappropriate without affording at least one opportunity to cure a potentially remediable pleading defect. See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002). This is the first challenge to the first complaint, there is no scheduling-order impediment, and amendment would cause no undue delay or prejudice. Accordingly, Plaintiff should receive leave to replead in the unlikely event of dismissal.

**CONCLUSION**

The Court should deny Defendant's Rule 12(b)(6) motion and its alternative Rule 12(e) request. The charge fairly encompasses the disability, retaliation, and interference claims; the timely denial and termination are independently actionable; and the Complaint plausibly alleges each claim when read as a whole. If the Court identifies a curable pleading deficiency, it should grant leave to amend rather than dismiss any claim with prejudice.

Dated: August 17, 2026
Luling, Louisiana

Respectfully submitted,
**LAW OFFICES OF DAVID S. MOYER**

/s/ David S. Moyer
David S. Moyer (La. Bar No. 28166)
13551 River Road
Luling, Louisiana 70070
Telephone: (985) 308-1509
Facsimile: (985) 308-1521
Email: davidmoyerlaw@gmail.com

**SAGE LEGAL LLC**
*/s/ Emanuel Kataev, Esq.*
Emanuel Kataev (NY Bar No. 5154588)
*Pro Hac Vice Admission Pending*
18211 Jamaica Avenue
Jamaica, New York 11423-2327
(718) 412-2421 (office)
(718) 489-4155 (facsimile)
(917) 807-7819 (cellular)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff*
*Charles D. Walker*

**CERTIFICATE OF SERVICE**

I certify that on August 17, 2026, the foregoing was filed electronically through the Court's CM/ECF system, which will provide notice to all counsel of record.

*/s/ David S. Moyer, Esq.*
David S. Moyer, Esq.